**OJUS MINING CO. v. MANUFACTURERS TRUST CO. et al.[*]**

**No. 7679.**

Circuit Court of Appeals, Ninth Circuit.

Feb. 24, 1936.

James F. Ailshie, Jr., Dean Driscoll, and Sam S. Griffin, all of Boise, Idaho, for appellant.

Leonard G. Bisco, of New York City, and Hawley & Worthwine, of Boise, Idaho, for appellees.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

MATHEWS, Circuit Judge.

Appellant brought this action against appellees for damages in the sum of $217,534 for the breach of an alleged contract. At the close of appellant's evidence, appellees moved for a directed verdict, on the ground, among others, that the alleged contract had not been proved. The trial court granted the motion, directed a verdict for appellees, and thereupon entered judgment in their favor. This appeal is from that judgment.

The complaint alleges, in substance, that appellee Manufacturers Trust Company (hereinafter referred to as the trust company) was the owner of a certain mining property known as the Lincoln mine, consisting of five claims situate in Gem county, Idaho, the title to which appeared of record in the name of appellee Alexander Lewis; that on November 21, 1931, appellee Lewis leased said property to William I. Phillips for a term of ten years; that on June 17, 1932, Phillips assigned said lease to appellant; and that thereafter, until April 25, 1933, appellant was in possession of said property under and by virtue of said lease.

The complaint further alleges that on April 25, 1933, appellant, "by its agent, W. I. Phillips," and appellees, "acting through Jess Hawley," made and entered into an oral contract to the effect that said lease of November 21, 1931, should be terminated and canceled and possession of said mining property surrendered to appellees, free of encumbrance, in good working condition, and without the removal of any machinery or appliances, in consideration of which appellees agreed to organize a cor-

*Rehearing denied March 30, 1936.

poration under the laws of Idaho, to convey all of said property to said corporation, and to issue and deliver to Phillips, for the use and benefit of appellant, 40 per cent. of the capital stock of said corporation, which, if said contract had been performed according to its terms, would have been worth $217,534.

The complaint further alleges that, pursuant to said contract, and on appellees' demand, said lease was terminated and canceled, and possession of said property was surrendered to appellees on April 25, 1933, and that appellant has performed all the terms and conditions of said contract on its part to be performed, but that appellees have failed and refused to organize any corporation, or to convey said property thereto, or to issue any stock to Phillips for appellant's use or benefit, or to perform any of the terms or conditions of said contract, all to appellant's damage in the sum of $217,534.

Appellees, by their amended answer, denied having made or entered into the alleged contract.

On these pleadings, the case went to trial, and appellant introduced evidence, oral and documentary, at the conclusion of which the trial court granted appellee's, motion for a directed verdict. This action of the trial court is assigned as error. The question thus presented is whether there was any evidence on which a verdict for appellant might properly be found. In deciding this question, we assume, as established, all the facts which the evidence supporting appellant's claim reasonably tends to prove, and draw in appellant's favor all the inferences fairly deducible from such facts. Lumbra v. United States, 290 U.S. 551, 553, 54 S.Ct. 272, 78 L.Ed. 492; Gunning v. Cooley, 281 U.S. 90, 94, 50 S. Ct. 231, 74 L.Ed. 720. These facts and inferences, briefly summarized, are as follows:

The trust company became the owner of the Lincoln mine on May 10, 1923, but title thereto was taken and held in the name of appellee Lewis, an employee of the trust company. On March 25, 1926, Lewis, acting in his own name and ostensibly for himself, but actually for and on behalf of the trust company, leased the Lincoln mine to H. W. Dorman. Dorman assigned this lease to Lincoln Mines Operating Company, which operated the mine until some time in 1929, when the lease was terminated and the mine surrendered to the trust company. While operating under this lease, Lincoln Mines Operating Company purchased and placed on the leased premises certain machinery and equipment, which it still owns, and on which Helen S. Pearson has a chattel mortgage, securing a note held by her in the sum of $45,000.

On November 21, 1931, appellee Lewis, again acting in his own name and ostensibly for himself, but actually for and on behalf of the trust company, leased the Lincoln mine to Phillips for a term of ten years. Phillips assigned this lease to appellant on June 17, 1932. Thereafter appellant operated the mine for several months and remained in possession thereof until April 25, 1933. This lease called for certain royalty payments, which appellant was unable to make and did not make. Because of this default, the lease was, by its terms, subject to forfeiture and termination at the option of the lessor. This situation existed in the fall of 1932 and continuously thereafter until termination of the lease.

In December, 1932, and January, 1933, Louis S. Posner, an attorney at law representing Phillips, conferred with J. Lawrence Gilson, a vice president of the trust company, and sought from him, but did not obtain, a modification of the lease of November 21, 1931. Their last meeting was on January 23, 1933. On January 27, 1933, Leonard G. Bisco, an attorney at law representing the trust company, wrote Posner the following letter: "After considerable thought and discussion relative to the suggestions made by you at the last meeting, it was finally decided to formulate, in writing, a statement of the position of Huron [1] in this matter. The enclosed memorandum represents, in substance, if not in exact detail, the ultimate extent to which our people would consider going, providing it is agreeable to Phillips. From the standpoint of time, Phillips should indicate his approval or disapproval of this proposal within the next ten days or two weeks."

The memorandum referred to in this letter was dated January 24, 1933. It reads as follows:

"At the meeting of January 23, 1933, the following plan was developed, without prejudice, for submission to the directors of Huron, if agreeable to Phillips.

---

[1] The name "Huron" was simply another name for the trust company.

"1. Notice of default and demand for possession, in accordance with the lease and option agreement [2] and with the Idaho law, will be duly served upon Ojus Mining Company and will be followed by or accompanied with (depending upon the local requirements) a suit for the recovery of possession of the mine.

"2. If the suit is undefended and results in a final decree or judgment terminating the lease and awarding possession to the owner,[3] or, if a proper instrument of surrender and cancellation of the lease is executed by Ojus Mining Company, and if the mine is obtained by the owner in good working condition, without the removal of any machinery or appliances [4] (which may require some arrangements to be made with the mortgagee [5]), free from any liens or encumbrances, then the owner will cause title to be transferred to a new mining corporation organized or qualified under the local laws, and will issue forty per cent (40%) of the capital stock thereof to Phillips and/or his associates,[6] if any. If deemed necessary by local counsel, Phillips' stock interest may be put in escrow or trusteed for a limited period of time until claims against the Ojus Mining Company are satisfactorily adjusted. When finally issued, Phillips' stock shall be pledged as collateral for his liability on loans [7] made by Manufacturers Trust Company.

"3. The new corporation will not assume any liability for any claims [8] against Ojus Mining Company. Any payments that it may voluntarily make to former creditors will be a charge against the 40% stock interest and will be repaid to the new corporation out of dividends which would otherwise be applicable to said 40% interest.

"4. Control of all finances and of the management and operation of the mine will be vested in Huron or its nominees by virtue of the 60% stock interest. If Phillips desires to remain on the property and to be associated with the operation of the mine, he may do so, but only upon a strictly employee basis, at a reasonable living salary, the terms and conditions of such employment to be in the discretion of the board of directors.

"5. Any additional funds that may be required for the development of the mine, but not exceeding $7500 maximum, will be loaned to the new company by the Huron interests (to be repaid before any dividends). The amount of any such loans, the use and application of the proceeds, and the method of repayment shall be in the sole and uncontrolled discretion of the lender."

The letter of January 27, 1933, was addressed to Posner, not to appellant. Posner was Phillips', not appellant's, attorney. There is no evidence that this letter or the memorandum of January 24, 1933, was intended to be or ever was, in fact, submitted to or considered by appellant. The letter invites an expression of approval or disapproval, not from appellant, but from Phillips.

Phillips, it is true, was appellant's president, but he was also president of Lincoln Mines Operating Company, which, being the owner of some of the property referred to in the memorandum, had apparently a greater interest in the subject matter than appellant had. Phillips may have been president of many other corporations. There is no evidence that the letter or the memorandum was intended to be or ever was, in fact, submitted to him as an officer, agent or representative of any corporation, or that he, as such officer, agent or representative, ever received, considered or acted on these documents or either of them.

The memorandum of January 24, 1933, was neither a contract nor an offer to contract. It was merely a statement of suggested terms and conditions, which at that time neither party had accepted, and which could not become effective until accepted by both parties to the proposed contract. These parties were Phillips and the trust company. There is nothing in the memorandum and nothing in the evidence to indicate that a contract between appellant and the trust company was ever contemplated.

The memorandum was received by Phillips on February 11, 1933. On April 14,

---

[2] This was the lease of November 21, 1931.

[3] The "owner" referred to in this memorandum was the trust company.

[4] Some of which belonged to Lincoln Mines Operating Company.

[5] Helen S. Pearson, holder of a chattel mortgage for $45,000.

[6] Phillips' "associates" were Nellie Posner and Paul C. Taylor.

[7] These loans amounted to more than $13,000.

[8] These claims amounted to more than $5,000.

1933, in a conversation with Jess Hawley, an attorney at law representing both appellees (the trust company and Lewis), Phillips informed Hawley that he, Phillips, approved and accepted the memorandum and all the terms and conditions thereof. The evidence indicates that, in so approving and accepting the memorandum, and in so informing Hawley of such approval and acceptance, Phillips was acting for himself individually. There is no evidence that he was acting as appellant's agent.

On April 21, 1933, Hawley, acting for both appellees, delivered to Phillips a written notice, terminating the lease of November 21, 1931, for failure to make royalty payments and for other defaults, and demanding that possession of the mine be surrendered to Hawley, as agent for appellee Lewis. This notice was addressed to Phillips, as lessee, and to appellant, as his assignee. It was signed by Hawley, as agent for appellee Lewis. Receipt of it was acknowledged by Phillips, for himself and as appellant's president. Phillips and appellant complied with the notice and demand by surrendering possession of the mine to Hawley on April 25, 1933.

Appellant contends that what Hawley did and said constituted an acceptance by him, as appellees' agent, of the terms and conditions stated in the memorandum of January 24, 1933, which terms and conditions Phillips had already accepted; that Hawley's acceptance was duly authorized or subsequently ratified by appellees and, therefore, binding on them; and that appellees thereby made and entered into a contract. If so, it was a contract with Phillips, not with appellant. There is no evidence that it was made by Phillips as appellant's agent. The burden of proving such agency, if it existed, was on appellant. Shields v. Coyne, 148 Iowa, 313, 127 N.W. 63, 29 L.R.A.(N.S.) 472, Ann.Cas. 1912C, 905; Powell v. Wade, 109 Ala. 95, 19 So. 500, 55 Am.St.Rep. 915; McConnell v. East Point Land Co., 100 Ga. 129, 28 S.E. 80; Ruiz v. Norton, 4 Cal. 355, 358, 60 Am.Dec. 618; Coast Fisheries Co. v. Linen Thread Co. (D.C.Mass.) 269 F. 841, 843. That burden has not been sustained.

Appellant sued on an alleged contract between appellant and appellees. No such contract was proved. There was, therefore, no error in directing a verdict for appellees.

In reaching this conclusion, we have considered all evidence offered by appellant, including that which the trial court excluded, and have disregarded all evidence the admission of which appellant assigns as error. It thus becomes unnecessary to review these rulings.

Judgment affirmed.